NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
Assistant United States Attorney
Deputy Chief, International Narcotics,
 Money Laundering & Racketeering Section
MAX B. SHINER (Cal. Bar No. 187125)
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section
        1400/1300 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: 213-894-5339/3308
        Facsimile: 213-894-0142
        E-mail: shawn.nelson@usdoj.gov
               max.shiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-173-GW-34 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR YOBANEY PINEDA |
| v. | |
| JOSE LANDA-RODRIGUEZ, et al.,<br>  [#34-YOBANEY PINEDA], | |
| Defendants. | |

     1.   This constitutes the plea agreement between YOBANEY PINEDA
("defendant") and the United States Attorney's Office for the Central
District of California (the "USAO") in the above-captioned case. This
agreement is limited to the USAO and cannot bind any other federal,
state, local, or foreign prosecuting, enforcement, administrative, or
regulatory authority.

///

1

<u>DEFENDANT'S OBLIGATIONS</u>

2      2.    Defendant agrees to:

3          a.    At the earliest opportunity requested by the USAO and

4    provided by the Court, appear and plead guilty to Count One of the

5    Indictment in <u>United States v. Jose Landa-Rodriguez, et al.</u>, CR No.

6    18-173-GW, which charges defendant with conspiring to engage in

7    racketeering activity, in violation of 18 U.S.C. § 1962(d).

8          b.    Not contest facts agreed to in this agreement.

9          c.    Abide by all agreements regarding sentencing contained

10   in this agreement.

11         d.    Appear for all court appearances, surrender as ordered

12   for service of sentence, obey all conditions of any bond, and obey

13   any other ongoing court order in this matter.

14         e.    Not commit any crime; however, offenses that would be

15   excluded for sentencing purposes under United States Sentencing

16   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

17   within the scope of this agreement.

18         f.    Be truthful at all times with the Probation Pretrial

19   Services Office and the Court.

20         g.    Pay the applicable special assessment at or before the

21   time of sentencing unless defendant lacks the ability to pay and

22   prior to sentencing submits a completed financial statement on a form

23   to be provided by the USAO.

24         h.    Agree to, and not oppose, the imposition of the

25   following condition of probation or supervised release:  Defendant

26   shall submit to the search, with or without probable cause or

27   reasonable suspicion, of defendant's person, vehicle, residence,

28   ///

digital devices, including cell phones, and any other real or personal property under defendant's control.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    At the time of sentencing, move to dismiss the remaining counts as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in Count One of the Indictment, that is, racketeer influenced and corrupt organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d), the following must be true: (1) an agreement existed between two or more persons employed by or associated with an enterprise that would have affected interstate or foreign commerce, to conduct or participate, either directly or

indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity; (2) defendant joined or became a member of the agreement with knowledge of its purpose; and (3) defendant agreed that someone, not necessarily defendant, would commit at least two acts of racketeering activity in furtherance of the conspiracy.

5.   An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. "Racketeering activity" includes: any act or threat involving murder, kidnapping, robbery, or extortion, which is chargeable under state law and punishable by imprisonment for more than one year; any offense involving dealing in a controlled substance in violation of 21 U.S.C. §§ 841 or 846; witness tampering in violation of 18 U.S.C. § 1312; retaliating against a witness in violation of 18 U.S.C. § 1513; money laundering in violation of 18 U.S.C. §§ 1956 or 1957; identity fraud in violation of 18 U.S.C. § 1028; and access device fraud in violation of 18 U.S.C. § 1029.

6.   A "pattern of racketeering activity" is at least two acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering.  To establish a pattern, the acts of racketeering activity must have a "nexus" to the enterprise and be related, i.e., criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated.  The acts of racketeering activity themselves must either extend over a substantial period of time or they must pose a threat of continued criminal activity.

Defendant admits that defendant agreed that defendant or a co-conspirator would commit two acts of racketeering activity and is, in fact, guilty of this offense as described in Count One of the Indictment.

<u>PENALTIES</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1962(d) is: twenty years' imprisonment; a five-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral

consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

11. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a. Throughout the period described in the Indictment, the Mexican Mafia LACJ Enterprise (or, the "Enterprise") was a criminal enterprise composed of a group of individuals associated for a common

purpose of engaging in a course of conduct, which course included the trafficking of methamphetamine, heroin, and other controlled substances, kidnapping, robbery, extortion, money laundering, witness tampering and retaliation, identity and access device fraud, and murder.  In that regard, the Mexican Mafia LACJ Enterprise controlled the majority of drug distribution among Hispanic inmates inside of the Los Angeles County Jail ("LACJ"), and maintained control and authority over Hispanic inmates in the LACJ through threats, intimidation, and acts of violence against those inmates.

b.    The Mexican Mafia LACJ Enterprise committed, attempted to commit, and threatened to commit acts of violence, including assaults and murders, to protect and expand the enterprise's criminal operation, and promoted a climate of fear among rival gang members, potential witnesses to the enterprise's criminal conduct, Hispanic gang members and inmates, and those who may cooperate with law enforcement authorities both within and outside of LACJ.

c.    The Mexican Mafia LACJ Enterprise smuggled controlled substances into LACJ for distribution, and used the threat of violence to extort others engaged in the smuggling and distribution of controlled substances within LACJ, as a means to generate income. The Mexican Mafia LACJ Enterprise engaged in extortion of inmates by other means, including by the operation of a "kitty" within LACJ and by issuing fines for violations of Mexican Mafia rules, as other sources of generating income.  Further, the Mexican Mafia LACJ Enterprise used the threat of violence to profit from drug trafficking outside of LACJ by members of street gangs controlled by or affiliated with the Mexican Mafia, by requiring the payment by

///

1  these gangs of a portion of their drug proceeds, which amounted to

2  extortion of drug dealers.

3      d.   As a result of its drug trafficking conduct,

4  throughout the period described in the above-captioned Indictment,

5  and as known to defendant, the Mexican Mafia LACJ Enterprise members

6  and associates engaged in, and their activities in some way affected,

7  commerce between one state and another state.

8      e.   Prior to August 2015, and continuing after November

9  2015, an agreement existed between two or more persons to

10 participate, either directly or indirectly, in the affairs of the

11 Mexican Mafia LACJ Enterprise through a pattern of racketeering

12 activity.  Beginning no later than August 22, 2015 and continuing at

13 least until November 22, 2015, defendant YOBANEY PINEDA joined and

14 became a member of that agreement, knowing of its purpose, knowing it

15 was illegal, and intending to help accomplish it.  In that capacity,

16 defendant agreed that a conspirator, whether defendant or someone

17 else, would commit at least two acts of racketeering activity, in the

18 form of extortion and money laundering, which acts had a relationship

19 to one another and the enterprise, and posed a threat of continued

20 criminal activity.

21      f.   During the time period of August 2015 through November

22 2015, defendant was incarcerated within the North County Correctional

23 Facility ("NCCF") of the LACJ and had been appointed to be a shot-

24 caller for NCCF.  In that role, defendant was responsible for

25 carrying out the orders and procedures of the Enterprise within NCCF

26 and communicating with secretaries who were out of custody.

27      g.   In furtherance of the racketeering conspiracy,

28 defendant committed at least the following acts:

8

i.   On or about August 22, 2015, defendant received an order from an out-of-custody secretary to have victim R.B. assaulted because R.B. was interfering with Enterprise activities, including drug trafficking and extortion.

ii.  On or about August 22, 2015, defendant reported to an out-of-custody secretary that victim M.G. was interfering with Enterprise activities, including drug trafficking and extortion.

iii. On or about August 22, 2015, defendant received an order from an out-of-custody secretary that M.G. was to be assaulted for interfering with Enterprise activities.

iv.  On or about August 22, 2015, defendant ordered that R.B. and M.G. be assaulted for interfering with Enterprise activities, and on or about August 23, 2015, R.B. and M.G. were assaulted in dorm 828 of NCCF.

v.   On or about November 22, 2015, in a recorded conversation with co-conspirators acting as out-of-custody facilitators, defendant was instructed about who was in control of NCCF, who defendant should be reporting to with regard to Enterprise activities, who would act as shot-caller for certain modules within NCCF, and that a certain a co-conspirator had lost his status in the Enterprise.

## SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have

any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

13.   Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

**Count One**

| GROUP 1 (Extortion) | | |
|---|---|---|
| Base Offense Level | 18 | [USSG § 2B3.2(a)] |
| Threat of Bodily Injury | +2 | [USSG § 2B3.2(b)(1)] |
| Bodily Injury | +2 | [USSG § 2B3.2(B)(4)] |
| GROUP 2 (Money Laundering) | | |
| Base Offense Level | 22 | [USSG § 2S1.1(a)(1)] |

14.   Defendant and the USAO agree that, taking into account the
factors listed in 18 U.S.C. § 3553(a)(1)-(7), the relevant Sentencing
Guidelines effective on November 1, 2018, represent a reasonable
basis for the Court to determine defendant's sentence in this case,
and that defendant should be sentenced in accordance with the
Sentencing Guidelines.  Therefore, subject to paragraph 25 below,
defendant and the USAO agree not to argue, either orally or in
writing, that the Court (a) not follow the Sentencing Guidelines in
imposing sentence; (b) impose a sentence not in accordance with the
Sentencing Guidelines; or (c) impose a term of imprisonment outside
the sentencing range corresponding to the determined offense level.
///

10

15.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

///

///

11

1

## WAIVER OF APPEAL OF CONVICTION

2      17.  Defendant understands that, with the exception of an appeal
3  based on a claim that defendant's guilty plea was involuntary, by
4  pleading guilty defendant is waiving and giving up any right to
5  appeal defendant's conviction on the offense to which defendant is
6  pleading guilty.

7

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

8      18.  Defendant agrees that, provided the Court imposes a total
9  term of imprisonment on all counts of conviction of no more than the
10  high-end of the applicable guideline range corresponding with a total
11  offense level of 19 or lower and the criminal history category as
12  found by the Court, defendant gives up the right to appeal all of the
13  following: (a) the procedures and calculations used to determine and
14  impose any portion of the sentence; (b) the term of imprisonment
15  imposed by the Court; (c) the fine imposed by the Court, provided it
16  is within the statutory maximum; (e) the term of probation or
17  supervised release imposed by the Court, provided it is within the
18  statutory maximum; and (f) any of the following conditions of
19  probation or supervised release imposed by the Court: the conditions
20  set forth in General Order 18-10 of this Court; the drug testing
21  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the
22  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7);
23  and the search condition agreed to in Paragraph 2.

24

## RESULT OF WITHDRAWAL OF GUILTY PLEA

25      19.  Defendant agrees that if, after entering guilty plea
26  pursuant to this agreement, defendant seeks to withdraw and succeeds
27  in withdrawing defendant's guilty plea on any basis other than a
28  claim and finding that entry into this plea agreement was

involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any allegation of a prior conviction for a felony drug offense that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

20.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

21.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

22.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare the agreement breached.  All of defendant's obligations are material, a single breach of the agreement is sufficient for the

13

USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares the agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under the agreement.

23. Following the Court's finding of a knowing breach of the agreement by defendant, should the USAO choose to pursue any charge or any allegation of a prior conviction for a felony drug offense that was either dismissed or not filed as a result of the agreements, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements

1  or any evidence derived from the statements should be suppressed or
2  are inadmissible.

3     COURT AND PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

4     24.  Defendant understands that the Court and the Probation and
5  Pretrial Services Office are not parties to this agreement and need
6  not accept any of the USAO's sentencing recommendations or the
7  parties' agreements to facts or sentencing factors.

8     25.  Defendant understands that both defendant and the USAO are
9  free to: (a) supplement the facts by supplying relevant information
10 to the Probation and Pretrial Services Office and the Court,
11 (b) correct any and all factual misstatements relating to the Court's
12 Sentencing Guidelines calculations and determination of an
13 appropriate sentence under the § 3553(a) factors, and (c) argue on
14 appeal and collateral review that the Court's Sentencing Guidelines
15 calculations and the sentence it chooses to impose are not error,
16 although each party agrees to maintain its view that the calculations
17 in paragraph 13 are consistent with the facts of this case.  This
18 paragraph permits both the USAO and defendant to submit full and
19 complete factual information to the Probation and Pretrial Services
20 Office and the Court, even if that factual information may be viewed
21 as inconsistent with the factual basis and sentencing factors agreed
22 to in this agreement.

23    26.  Defendant understands that even if the Court ignores any
24 sentencing recommendation, finds facts or reaches conclusions
25 different from those agreed to, and/or imposes any sentence up to the
26 maximum established by statute, defendant cannot, for that reason,
27 withdraw defendant's guilty pleas, and defendant will remain bound to
28 fulfill all defendant's obligations under this agreement.  Defendant

15

1  understands that no one -- not the prosecutor, defendant's attorney,

2  or the Court -- can make a binding prediction or promise regarding

3  the sentence defendant will receive, except that it will be within

4  the statutory maximum.

5                        <u>NO ADDITIONAL AGREEMENTS</u>

6       27.  Defendant understands that, except as set forth herein and

7  in any contemporaneous agreement or addendum signed by all parties,

8  there are no promises, understandings, or agreements between the USAO

9  and defendant or defendant's attorney, and that no additional

10 promise, understanding, or agreement may be entered into unless in a

11 writing signed by all parties or on the record in court.

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1          <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2     28.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 NICOLA T. HANNA
United States Attorney

9

10 _____        9/16/19

11 SHAWN J. NELSON/MAX B. SHINER    Date
Assistant United States Attorney

12

13 _____      9/16/19
YOBANEY PINEDA        Date
14 Defendant

15

16 _____      9/16/19
JOHN CARLTON        Date
17 Attorney for Defendant
YOBANEY PINEDA

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement or in an agreement signed by all parties or on the record in court.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

YOBANEY PINEDA
Defendant

9/16/19
Date

18

1
              CERTIFICATION OF DEFENDANT'S ATTORNEY

2
     I am YOBANEY PINEDA's attorney.  I have carefully and thoroughly

3
discussed every part of this agreement with my client.  Further, I

4
have fully advised my client of his rights, of possible pretrial

5
motions that might be filed, of possible defenses that might be

6
asserted either prior to or at trial, of the sentencing factors set

7
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8
provisions, and of the consequences of entering into this agreement.

9
To my knowledge: no promises, inducements, or representations of any

10
kind have been made to my client other than those contained in this

11
agreement or in an agreement signed by all parties or on the record

12
in court; no one has threatened or forced my client in any way to

13
enter into this agreement; my client's decision to enter into this

14
agreement is informed and voluntary; and the factual basis set forth

15
in this agreement is sufficient to support my client's entry of

16
guilty pleas pursuant to this agreement.

17

18
_____   ___9/16/19_____
                                      Date

19
JOHN CARLTON
Attorney for Defendant
YOBANEY PINEDA

20

21

22

23

24

25

26

27

28